Indian claims; timeliness of matters raised after final judgment; esptoppel; attorney fees controversy. — On May 23, 1980 the court entered the following order:
Before Friedman, Chief Judge, Nichols and Smith, Judges.
Except for the question of attorney’s fees, which may prove no small exception, this case has been adjudged and the Indian Claims Commission award under 25 U.S.C. § 70a and ff has been certified for payment and duly credited to the claimants. Decisions by this court are reported, 209 Ct. Cl. 43, 531 F.2d 495, cert. denied, 429 U.S. 885 (1976) and *658 219 Ct. Cl. 346, 593 F. 2d 994, cert. denied, 444 U.S. 973 (1979). We now have to adjudicate a petition for counsel fees and expenses which is opposed by parties who claim a standing to do so.
This case was one of those land taking claims where it was difficult to point the Commission’s finger on any act by defendant that constituted a taking. Instances of formal "extinguishment” of Indian title tended to confine themselves to land perceived to be of utility and value by the retreating Indians, or the invading whites, or both. As to the remaining land, of which the American west contained a great deal, there would appear to have been a tendency in Indian Claims Commission proceedings, to assume or presume the United states had taken any Indian land which once had been occupied or used by Indians, to an extent sufficient to make a case of Indian title, and now was no longer a part of any recognized Indian reservation. The alternative that the Indians might still own the land was likely not to be seriously urged by any party. All parties tended to view the task as to select a taking date for valuation purposes, which might be a date when defendant had in fact done nothing, and have scant if any relation to the date when the Indians had last made use of the land in issue. The Act itself was a machinery for assessing money awards, not for confirming Indian title to land never taken. The authors of the Act may have supposed there was no land in the latter category.
It has been explained in previous phases of the instant case that as of 1946 and up to the prescribed deadline for petitioning in 1951, the possibility of a money award for a taking of a tract in the category above-stated, was a magnet of overwhelming attractiveness, while on the contrary, the assertion that the Indians still owned the land was viewed as sterile of any practical benefit to the Indians, immediately or in the foreseeable future. The foregoing is written, not as a fact-finding of the court, but as summarizing claimants’ explanation of why it was so long before Indians who now object to the procedure followed in this case entertained and made known their present views.
The instant claim, like others, was actually prosecuted on the basis of maximizing the acreage of land the claimants *659 said the United States had taken, in pursuit of the maximum dollar award. The Commission "awarded,” i.e., determined to have been taken, less than the acreage claimed, but the excess was due to findings that the claimants had not had Indian title to all that they petitioned for. Any view that their counsel’s strategy was not in the Indians’ best interests would appear to have postdated certain highly publicized instances where Eastern Indians successfully maintained that they still owned valuable tracts they had supposedly lost long since. The first the Commission officially heard of such a view, as applied to this case, was April 18, 1974. On that date a body calling itself the Western Shoshone Legal Defense and Education Association, and Frank Temoke, an individual, petitioned to stay proceedings and for leave to present an amended claim. Before that date the Commission had determined the extent of the tract taken, the taking date (which was stipulated), and the value of the land taken. The proceedings since April 18, 1974, are described in our two opinions above-cited, and may be characterized as a sustained and sophisticated effort to take the litigation out of the hands of those who then had charge of it, with a view to minimize, not maximize, the area of land already found to have been taken, even at the cost of reducing the dollar award. However, the new school, if we may so characterize it, was not willing to drop entirely any part of the claim for money until it had assurance we could not provide that the Indians owned the land.
In the first appeal we sustained the Commission’s refusal to allow intervention, on the ground that it came too late, that the attempted intervenors had long known of the litigation policy they objected to, and that they showed no right in themselves to supersede the Temoak Band as representing the Western Shoshone.
In the second appeal new counsel before us, Sonosky, Chambers & Sachse, appeared and represented that the Temoak Band had refused to continue its contract with old counsel, Wilkinson, Cragun & Barker. Old counsel filed statements that indignantly traversed this. New counsel renewed- the request for partial suspension to allow pursuit of the claim the Shoshones still owned part of the land the *660 Indian Claims Commission had determined to have been taken. Old counsel argued the cross-appeal issue whether the Commission properly awarded damages for pretaking removal of minerals. We understood that counsel had agreed to this course to obtain decisions on the matters of substantive moment, leaving for later decision the question whether old counsel had been properly and lawfully removed, and any other matter primarily the concern of counsel.
Now the case is decided except for counsel fees. It appears that payment pursuant to our decisions has been held to effect extinguishment of Indian title if any remained. United States v. Dann, Dist. Ct., D. Nev., April 25, 1980. This result we anticipated, unless Congress acted to prevent it. Congress has not acted.
Old counsel have petitioned for a fee award of $2,614,518.99, which is 10 percent of the judgment. New counsel do not join in this petition and we are not informed of their position, if they have one. There is also a petition for reimbursement of expenses. Defendant advises that the 1978 request of the attorneys of record for approval of an extension of their contract was not approved. Apparently it has not been rejected either. We now have a motion for leave to file certain papers by attorney Thomas E. Luebben, of Luebben, Hughes & Kelly, of Albuquerque, New Mexico, who professedly represent a new (at least new to the case) body called the Western Shoshone Sacred Lands Association. These papers (we will call them the Luebben papers) oppose the award of fees and expenses to old counsel. Old counsel has responded. Leave to file the papers now before us is granted, as no one else is now before us to give the fee determination an adversary rather than an ex parte character. The filing of any further papers shall be as hereinafter stated. Some representations in the Luebben papers and in old counsel’s opposition raise a question whether the Temoak Band or other parties previously recognized are currently in a position to state whether they agree with or oppose the fee and expenses petitions. At any rate, they have not yet done so.
Old counsel fear, and rightly, judging by several expressions in the Luebben papers, that proceedings to assess the *661 fee and expenses will be used as a vehicle for another round of deliberations on the propriety of old counsel’s strategy. Allegedly they maximized the extent of land claimed to be taken in willful disregard of the wishes of the Western Shoshones and of their best interests. Our previous decisions will reveal that this is a change of position that has come too late, assuming arguendo that a majority of Western Shoshone now really do not want the large sum paid for their benefit. Having retained counsel to do what they did, and having stood silent until 1974 while the date of taking and the extent of land taken and its value on the taking date was determined, they are bound by the result, and estopped to assert that counsel’s strategy was not in their best interests nor in accord with their wishes.
However, we see circumstances in this case that preclude a routine fee determination by the appellate division pursuant to the procedure of our General Order of December 15, 1978. Spokesmen for the Indians may intend a claim for malpractice not barred by the aforementioned estoppel. We do not have firm recommendations by defendant nor is it clear whether the tribe will be. able to take a position through the Temoak Band which has represented it throughout. The status of old counsel’s retainer is in question during the final year or more the suit was pending. It is not clear whether any counsel other than old counsel may have a claim against the fee.
The questions of counsel fees and expenses are referred to the trial division pursuant to Rule 54(a) for a trial judge’s opinion and recommendation, subject to the following directions:
1. The opinions and recommendations of all or any of the parties listed át 2 and 3 of the fee petition shall be considered if submitted. If the above are unwilling or unable to state a position, other persons and organizations representing Indians having a pecuniary interest sufficient for standing may file papers and be heard. The Interior Department and the Department of Justice apparently do not wish to be heard, but may change their minds.
2. The identity of counsel who represented the claimants up to the payment date shall be determined, and if old *662 counsel were properly terminated, who took their place if anyone?
3. What proportion, if any, of the compensable legal work in litigating the claim was done by anyone other than old counsel and after old counsel was no longer employed?
4. Whether any allegations of malpractice against old counsel have enough substance to present a triable issue of fact in view of our above decision on estoppel?
5. What amount of fee and expenses shall be paid for services of what value, and to whom?
6. The issues and contentions of the parties shall be clarified by further filings, stipulations, pretrial orders, etc., as the trial judge may direct. If a genuine issue of fact requiring trial is found to exist, the trial judge shall not proceed to trial without further order by us.
7. Considering that the fee award will not bear interest, and considering the narrow grounds on which objections to it might be urged in view of the estoppel considerations mentioned above, the court will expect the cooperation of the Indians and their spokesmen in stating clearly, promptly, and in good faith any other objections to the fee and expenses they may have. Sanctions for causing delay must be rigorously imposed. The trial division shall give this matter priority and the trial judge shall make his report not later than 90 days from the date of this order. That Indians might object to the fee when the case became ripe for payment of one, is a hazard counsel assumed under their retainers. We cannot place obstacles in the way of the Indians asserting such objections. We can and do insist that they cooperate in having their issues promptly resolved.
8. The request of old counsel that we order parties objecting to the fee to file a bond if they are to be heard is rejected without prejudice to renewal if delay occurs exceeding 90 days, and if such objecting parties are not clear of responsibility for causing the delay.